**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) **CRIMINAL NO. 1:17-cr-00185 (BAH)** |
| | ) |
| **v.** | ) |
| | ) |
| **MARTIN PARTIDA-CEJA,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

_____

## GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION

The United States respectfully moves to detain the Defendant, Martin Partida-Ceja, pending trial, pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is alleged to be a high-ranking member of an international drug trafficking organization ("DTO"). As discussed below, the Defendant is charged with drug trafficking offenses that carry a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. Further, the Defendant faces significant jail time, including a mandatory minimum sentence of ten years; potentially has access to substantial amounts of drug proceeds in the form of untraceable cash; has no immigration status in the United States; and is subject to an immigration detainer. Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending trial.

## BACKGROUND

On October 5, 2017, a federal grand jury sitting in the District of Columbia returned and filed an Indictment against the Defendant, charging him with the following offense: conspiracy to distribute five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine, intending and knowing that the methamphetamine would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 963, 960(b)(1)(H), and Title 18, United States Code, Section 2.

An arrest warrant was issued on the same day that the Indictment was returned. The government believes that the Defendant was in Mexico at the time that he was indicted. Thereafter, however, it appears that the Defendant unlawfully entered the United States, and he was arrested by federal law enforcement in or near Lafayette, Indiana on May 16, 2019. Following an initial appearance and a Rule 5(c)(3) proceeding in the United States District Court for the Southern District of Indiana on May 17, 2019, the Defendant was transferred to this district. The defendant was arraigned on the Indictment on June 6, 2019. At arraignment, the government requested that the Defendant be detained pending trial, and requested a detention hearing pursuant to 18 U.S.C. § 3142(f).

The Indictment in this case is the product of an extensive, long-term, and ongoing investigation conducted by the Drug Enforcement Administration ("DEA"), Los Angeles Field Division. The Government anticipates that the evidence at trial will show that the Defendant was part of a larger, complex international narcotics conspiracy from 2013 until 2017. The object of the conspiracy was to import narcotics, namely methamphetamine, into the United States.

2

The Government's evidence at trial will consist of testimony from cooperating witnesses with direct communications with the Defendant to discuss drug trafficking and drug-trafficking related activities; recordings in which the Defendant reveals his participation in the production and trafficking of methamphetamine; and testimony from foreign law enforcement about narcotics seizures in Mexico.

The Defendant has no legal status in the United States and appears to have been residing in the United States unlawfully at the time of his arrest.  He previously served a 27-month sentence in federal prison for possession with intent to distribute marijuana.  He was released from custody in 1992 and thereafter deported to Mexico.  United States Immigration and Customs Enforcement ("ICE") has issued an immigration detainer notifying the United States Marshals Service ("USMS") that ICE intends to assume custody of the Defendant if he is released from custody because, in ICE's determination, there is probable cause that he is subject to removal from the United States.

## ARGUMENT

### The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  A finding of dangerousness must be supported by clear and convincing evidence.  § 3142(f); *see United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).  A finding of risk of flight must be supported by a preponderance of the evidence.  *See*

*Simpkins*, 826 F.2d at 96.  If the Court finds that no conditions will reasonably assure both the appearance of the defendant and the safety of any other person and the community, he or she shall order the defendant detained.  § 3142(e)(1).  Thus, detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.

The Bail Reform Act lists the following factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt.  *See* § 3142(g).  And under governing case law, the government may proceed by factual proffer in lieu of presenting live witnesses at a detention hearing pursuant to the Bail Reform Act.  *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

## Statutory Presumption of Dangerousness and Risk of Flight

Under § 3142(e)(3)(A), there is a rebuttable presumption that no conditions will assure as to both flight risk and danger if the defendant is charged with a Controlled Substances Act offense with a statutory maximum of 10 years or more.  In this case, in count one of the Indictment, the Defendant is charged with an offense for which the maximum term of imprisonment is life as prescribed by the Controlled Substance Act.  As the penalty of life imprisonment is more than 10 years, the presumptions of Section 3142(e) apply here.

An indictment charging a qualifying offense, as is the case here, is sufficient to trigger this rebuttable presumption.  *See Smith*, 79 F.3d at 1210-11; *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986).  When the presumption is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory

4

presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).   However, the presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains as an evidentiary finding militating against release and to be weighed along with all the evidence relating to the factors listed in § 3142(g).   *See United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (citing *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) and *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).   In other words, "it does not follow that the effect of the presumption disappears as soon as the defendant produced some contrary evidence. Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses."   *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *see also Cherry*, 221 F. Supp. 3d at 32; *Ali*, 793 F. Supp. 2d at 391.   Indeed, the concept of "dangerousness" in relation to serious drug crimes encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "harm to society caused by [continued] narcotics trafficking."   *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985); *see* S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 ("[L]anguage referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").   For the reasons discussed below, the Defendant will be unable to satisfy his

burden to rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community.

### Nature and Circumstances of the Offenses Charged

The factual proffer detailed herein is derived from a Drug Enforcement Administration investigation into the Defendant, his co-conspirators, and criminal associates. Throughout the course of the investigation, federal law enforcement agents employed a variety of investigative techniques to investigate the DTO of which the Defendant is a member, including Title III wiretap interceptions, consensual recordings of conversations in which criminal activity was discussed, debriefings of confidential sources and cooperating witnesses, and surveillance. Potential witnesses against the Defendant include co-conspirators who worked with him in connection with the production, transportation, and trafficking of illicit narcotics.

At trial, the government will show that the Defendant was a member of a large-scale methamphetamine production subgroup of the Cartel de Jalisco Nueva Generacion ("CJNG"), a major Mexican drug trafficking organization. The CJNG is one of the largest, most dangerous drug cartels currently operating in Mexico, and it is responsible for trafficking tonnage quantities of cocaine, methamphetamine, and fentanyl-laced heroin into the United States, as well as for violence and significant loss of life in Mexico.

During the time period alleged in the indictment, beginning in or about 2013, the Defendant was a methamphetamine production laboratory operator and supervisor for the CJNG in Mexico. Under the Defendant's management, methamphetamine laboratories that he supervised produced up to 1,000 kilograms of methamphetamine every 2-3 weeks while they were in operation. The defendant knew and/or intended that methamphetamine produced in his laboratories would be

6

transported to the United States for distribution and sale.  Among the evidence that the government may use at trial are recordings in which the Defendant can be heard arranging the distribution of methamphetamine into the United States, as well as testimony by former associates of the Defendant in which they would detail the Defendant's management of large-scale methamphetamine laboratories in Mexico on behalf of the CJNG.

### History and Characteristics of the Defendant

The Defendant's prior history and characteristics establish his risk of flight in this case.  A determination of risk of flight must be supported by a preponderance of the evidence.  *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).  Here, there is a significant risk of flight in this case due to the potential sentence the Defendant faces, as well as his lack of ties to this District or the United States.

The possibility of a severe sentence is an important factor in assessing a defendant's incentive to flee.  *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding the nature and circumstances of the offenses charged against defendant strongly favor detention because of the substantial incentive to flee the United States); *United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to avoid prosecution and the likelihood of imprisonment in the event of a conviction); *see also United States v. Ali*, 793 F. Supp. 2d at 392. As discussed above, the Defendant faces a mandatory minimum sentence of 10 years if convicted on the count charged in the Indictment.

Federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have

established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." *See, e.g., United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23).   This is nowhere more evident than in the type of transnational organized crime which the Defendant has engaged in, which often spans multiple countries and has the potential to generate millions of dollars in gross proceeds from the sale of potent controlled substances.   Indeed, "Congress made 'risk of flight' a grounds for detention because it believed that there were major drug dealers to whom the posting and losing of even large amounts of money bond were not a deterrent, but a mere cost of doing business." *United States v. Battle*, 59 F.Supp.2d 17, 19 (D.D.C. 1999).

The Defendant is a Mexican citizen and has no immigration status in the United States.  He was unlawfully present in the United States at the time of his arrest, and is subject to an immigration detainer.  If released on bond, therefore, the Defendant will be placed in immigration custody pending removal from the country.

Additionally, as set forth in the Pretrial Services Report for the Defendant, he has previously been convicted and served a sentence in a federal facility for drug offenses committed in 1990.  Following that conviction and sentence, he was deported to Mexico, where he resided thereafter.

There is a serious risk that the Defendant would attempt to leave the United States if given the opportunity.  He has no known lawful contacts in this federal district.  Although he was arrested in Indiana, evidently in the company of extended family members, his citizenship and primary ties are to Mexico.  In light of the gravity of the charges that he faces here, the mere fact that some extended family reside in the country would not motivate him to refrain fleeing from justice.

8

Additionally, other members of the Defendant's powerful DTO may aid and assist him in fleeing justice, as the CJNG exerts a high degree of corrupt control over various municipalities and states in Mexico, and would be able to assure the Defendant with a certain measure of freedom from arrest if he returned to Mexico.  And in any event, any alleged ties to the community stemming from the Defendant's presence in Indiana are short-lived:  at the time of his indictment in 2017, on information and belief, the Defendant was still residing in Mexico.  The pretrial services report prepared in connection with the Defendant's current charges in this Court appears to confirm that he had only been employed in Indiana for a year at the time of his arrest.[1]  Any ties to this country, therefore, cannot be said to be extensive in light of their short duration.  The Defendant has no reason to remain in this country, and he therefore represents an overwhelming risk of flight if released from custody, and he has no ties to the community to assure his appearance.

In sum, the Defendant has the means, motive, and opportunity to flee the country and should be detained without bail.  *See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention warranted because not only was defendant indicted on serious charges carrying a severe punishment potential, but defendant had ability to flee the United States); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 36 (D.D.C. 2005) (finding detention warranted because not only did the defendant have the ability to flee D.C. and the United States, but also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad).

---

[1] Additionally, the government has information that the Defendant was employed under a false identity, further calling into question whether conditions of release could reasonably assure the Defendant's appearance in this Court.

**<u>Safety of the Community</u>**

A determination of dangerousness to the community must be supported by clear and convincing evidence.   18 U.S.C. § 3142(f).   The federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus constitute a danger to the community.  *See, e.g., United Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23); *accord United States v. Creekmore*, 1997 W.L. 732435 (D.D.C. 1997) (Facciola, J.).   The Defendant participated in an international drug transportation and distribution organization that imported methamphetamine into the United States for distribution and sale.  If the Defendant were released and continued in this conduct, he would pose a significant risk to the safety of the community, both here in the United States and abroad.

**<u>Conclusion</u>**

For the foregoing reasons, the government respectfully submits that the Defendant cannot rebut the government's proof and proffer that supports the presumption that "no condition or

combination of conditions will reasonably assure [his] appearance . . . as required and the safety

of the community."  18 U.S.C. § 3142(e).  Accordingly, he should be detained pending trial.


Respectfully submitted this 11th day of June, 2019.

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By:    _____
Brett Reynolds
Trial Attorney
United States Department of Justice
Narcotic and Dangerous Drug Section
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530
Brett.Reynolds@usdoj.gov
(202) 598-2950

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Government's Motion for Pretrial Detention was filed with the Court and served on defense counsel by ECF filing on June 11, 2019.

By: _____
Brett Reynolds
Trial Attorney
United States Department of Justice
Narcotic and Dangerous Drug Section